Jack Rosenberg, J.
This is a motion to withdraw a plea of guilty by the defendant made before this court on May 30, 1973. The defendant’s attorney, who handled the negotiations leading to that plea, is the same attorney who is now handling the motion to withdraw. He is the source of the major documenta *310 tion submitted in support of the motion: — an affirmation by him to which he attached as exhibits what purport to be two memoranda, one dated May 29,1973 and the other dated June 4,1973, which he has stated were made contemporaneously with the events involved in the plea bargaining negotiations on May 23, 1973 and May 30, 1973, which preceded the acceptance of the defendant’s plea by this court on May 30, 1973, the withdrawal of which the defendant now seeks to achieve.
In support of the motion, defendant’s counsel refers in his affirmation to a conference on or about May 23, 1973 with the Assistant District Attorney, Mr. J. H. Leavey, then in charge of the case against his client, which resulted from the adjournment of the case for a week “ in an effort to work out a plea.” Present at /that conference were the defendant, a ¡Sergeant Erickson, defense counsel and his client. In the affirmation, defense counsel states that at one point in the conversation he raised the possibility that this court, which had adjourned the case for a week to permit efforts to work out a plea, “ might not accede to the People’s recommendation ”, and claims he “ suggested” that in such case “the People dismiss the charges against” the defendant, and that when “ Mr. Leavey said he would not dismiss the charges,” he then suggested “that the People consent to allowing Mr. Frederick to withdraw his plea.” Defendant’s counsel goes on to affirm, “ That suggestion was agreed to either implicitly or explicitly.” Recognizing the vague nature of this claim, he adds, “ I am hesitant to be more definite for I note that a memorandum [presumably that dated May 29, 1973 and attached to the affirmation as Exhibit A] written to myself appear [!] to be silent on this question.” Then in an apparent effort to supply ‘6 corroborative detail intended to add artistic verisimilitude to an otherwise bald and unconvincing narrative ” (Gilbert and Sullivan, The Mikado, act II), he goes on to state that “conversation that I have had subsequently with Sgt. Erickson and my client indicate [!] that an understanding of this sort was had among all parties.” He continues in circumlocutionary language similar to his claim that Mr. Leavey had agreed “ either explicitly or implicitly” to his suggestion, saying, “Mr. Neugarten who is presently the ADA in charge of the case has also indicated to me that conversations he had within his office indicate that there is some basis albeit not explicit for my belief that the withdrawal would-be consented to by the People.”
On this question of the People’s commitment to permitting a withdrawal of the plea of guilty if this court would not follow *311 the People’s recommendation at the time of sentence, he con-, eludes with the following weasel-worded claim which explicitly disavows a willingness to swear to such a commitment having been made .by the People: “ But for the fact that my notes do not indicate anything explicitly'said ¡by Mr. Leavey on this matter, I would swear that a definitive statement was made by him on the subject. In the absence of any note in my memorandum confirming that fact, I am prepared to accept my colleague’s position that I was at least justified in believing that consent would be forthcoming.
- But this court is no more persuaded by the affirmant’s colleague’s position, than it is by the affirmant’s references to conversations with Sergeant Erickson or what Mr. Neugarten “ indicated ” concerning “ conversations * * * within his office’’ of some basis albeit not “ explicit ” for the affirmant’s “ belief ” (emphasis supplied). The court also notes-that there is no indication on the record of the plea hearing that either the People or the defence advised it prior to acceptance of the plea that any such'agreement had been made and that in fact Mr. Leavey and his successor as the assistant handling the case, Jerrold Neugarten, deny having made any such agreement.[1] In any case, -such an agreement not made known to the court prior to the taking of the guilty plea can have no binding effect on this court (People v. Selikoff, 35 N Y 2d 227, 240-243).
The affirmation submitted in support of the motion to withdraw, does not, however, rely solely on the claim of the People’s agreement. Bather, it seeks to conjure lip out of the off-the-record discussions on May 23 and May 30, 1974 a commitment by this court that it would follow the recommendation óf the People. Although no allusion is made in the affirmation to any such com *312 mitment, the so-called “memorandum written to myself ” dated May 29, 1973, purporting to be the affirmant’s memorandum written to himself of the occurrences of May 23 (erroneously placed on May 24 in the memorandum dated May 29, 1973) contains the statement: “ Justice Rosenberg indicated that he would follow the recommendation of the State and if he could not in good conscience follow this recommendation he would allow the defendant to withdraw his plea. ” But in the second “memorandum written to myself ’ ’ dated and presumably prepared June 4, 1973, five days after the plea taking, though elsewhere the writer of the memorandum testified he had written it contemporaneously with the events with which it purports to deal, the affirmant attributes to the court and purports to quote language by it which eliminates all conditions with respect to this court’s willingness to follow the People’s recommendations, ignoring the record compiled by this court over years of service in considering pleas of guilty, of insisting that every agreement as to a plea be placed fully on the record and that 1 ‘ sentence is primarily a judicial responsibility ” and rejecting “ any attempt to undermine judicial control in the sentencing process ” (People v. Selikoff, supra, pp. 240-241). The affirmant states that in a bench conference with this court on May 30, 1973, at which Mr. Leavey was also present, this Court said, in response to the affirmant’s request that it state on the record that if it could not follow the People’s recommendation, it would allow withdrawal of the defendant’s plea: “ Look, you know me, don’t I always follow the People’s request, would I be doing the City of New York any good if I would send people to jail who Cooperated if they don’t want me to, c’mon let’s go, there is no need to put anything on the record, you know me better than that.”
Although the foregoing appears in quotation marks in both the affirmation and the claimed “contemporary” “memorandum written to myself, ” it is introduced in the memorandum as “substantively the following ” and in the affirmation as ‘1 substantially the following words, ” and the statement is stated to have been made on May 23 in contradiction of the fact as to the date of the taking of the plea.[2]
In fact, those minutes of May 30, 1973, to which the defense counsel’s affidavit makes no reference, possibly because they *313 became available only a few days ago (the week of Dec. 9, 1974) specifically contradict defense counsel’s claim that this court in off-the-record comments made at a bench conference on that day made a commitment that it would follow any recommendation made by the People as to sentence. Those minutes read as follows:
“mb. zapp: At this time my client offers to plead guilty to the fourth count of indictment number N-1030-43 of 1972, to cover all counts in that indictment, as well as indictment N-1028/41-72 and 1029/42-72, as well as a pending Criminal Court ease of grand larceny auto, New York Criminal Court; we don’t have the case number, but we know the arrest date is August 16, 1972; and any possible bail or parole jumping that may arise out of these cases.
“ mb. leavet : That plea is acceptable to the People, Your Honor.
“the court: Mr. Frederick, you understand English, sir?
“ dependant : Yes.
“the court: And I know you have been here quite a number of times and you have had an opportunity to think about this case, but have you had sufficient time to think about what you are doing now when you are pleading guilty?
“dependant: Yes.
“the court: Mr. Zapp, who stands next to you, who is associated with the Legal Aid Society, he has been your attorney during this time?
“dependant: Yes.
“ the court : Has he discussed with you, based upon his investigation and his opinion, as to what he thinks is the proper thing for you to do?
“ dependant : Yes, ¡he did.
“the court: Having had that discussion do you understand that you are pleading guilty to a “ C ” felony today?
“dependant: Yes.
“ the court : Do you understand under a “ C ” felony you can receive a sentence of up to fifteen years, as a matter of fact, there could be a minimum sentence of five years and a maximum sentence up to fifteen years; do you understand?
“dependant: Yes, I do.
“the court: Up to five for a minimum, up to fifteen for a maximum; do you understand?
“dependant: Yes, sir.
“the court: Now as far as I am concerned, and as far as the District Attorney is concerned, well, I will first ask you this: Has the District Attorney or your attorney indicated to you anything other than that I have the scope and I could sentence you up to fifteen years? Have any promises been made to you beyond what I have just said?
“dependant: No.
“ the court : In other words, what I am saying is I have made no promises except to get a probation report, listen to Mr. Zapp or whoever will be representing you, I assume Mr. Zapp, on the day of sentence, listen to you if you want to, and listen to the District Attorney if he wants to make any recommendation; but that if I sentence you to anywhere up to fifteen years, or a minimum of five years, up to five years, or a maximum up to fifteen, you have received all promises and recommendations that are here made today; do you understand?
*314 “ DEFENDANT: Yes.
“the court: And if by chance you are disappointed on that day that will be no reason for me to withdraw or allow withdrawal of the plea, do you understand that?
“defendant: Yes.
“the court: Do you understand what I said?
“defendant: Yes.”
This was followed by the court’s comment as follows:
“the court: I notice you turned to Mr. Zapp. I notice he said something to you. I don’t want to mislead you. I assume he didn’t say anything contrary to what I am saying. You understood what I said? I said that you can receive — and I make no promises as far as what I will do on the day of sentence. I don’t say I will, I won’t say I won’t, but I say I have that scope, and I can sentence you, and if you do receive a sentence up to a minimum of five years and a maximum of fifteen, you have no cause for complaint and say that you want to withdraw your plea because I will not allow it; do we understand each other?
“defendant: Yes.”
If, after the remarks above quoted, the defendant’s counsel failed to contradict the court’s record declarations above quoted despite the purported knowledge .of counsel as to an off-the-record bench conference which presumably had immediately preceded the foregoing remarks by the court, he knew that by such silence he was being utterly delinquent in his duty to his client. If he stood mute, as the record indicates he did, and allowed the court on the record to state without contradiction from him that it would not allow the defendant to withdraw his plea if he received a sentence (severe as indicated in the plea minutes) of imprisonment and that it was making no promises as to what it would do on the day of sentence, when as he claims, he had knowledge of a promise by the court to follow the People’s recommendation and also had knowledge, as he claims in his affirmation, that the People had promised to recommend probation and to support permitting the defendant a withdrawal of his plea if he did not receive probation, he would, at the least, have known that he was thereby estopped from advancing the factitious claim he now makes when he purports to quote remarks made off the record to him by this court. The record on its face showing no demur by defense counsel in response to the court’s remarks quoted above demonstrates the baselessness of the defendant’s claim and requires the repudiation without further consideration of the defendant’s claim to a hearing on the question of whether the court made the off-the-record promise defense counsel attributes to it. Such efforts to circumvent a clear and uncontradicted record must be ren *315 dered nugatory if the process of plea bargaining is not to be rendered futile.
The court is aware, of course, that if the defendant was told by his counsel that promises had been made by the court to allow him to withdraw his plea if he were sentenced to imprisonment, and the defendant believed his counsel and made his plea of guilty in reliance thereon, his plea might not in fact be truly voluntarily given. But the defendant was present in court and he heard the court’s admonitions and statements quoted above which clearly contradict any such assurances. He heard them and heard also the statement made to his counsel by the court after he, the defendant, had turned to his counsel who said something to him, which clearly contradicted any possible statement by his counsel to him that the court had made any promises such as counsel now claims as having been allegedly made. The defendant, who answered “ Yes ” to the court’s questions as to his understanding of the absence of promises and its not allowing the defendant to withdraw his plea, cannot now claim that his plea was made on the basis of his belief he had been promised by the court that he would either get probation or be allowed to withdraw his plea and that, therefore, his plea was involuntary. To allow him to do so would be to allow him to play fast and loose with the court, the law and the prosecution and to abuse the entire process of plea bargaining. The record demonstrates defendant’s claims to be without basis in fact.
This court cannot allow a convicted defendant who may have aided the prosecutor by serving as an informer, or a prosecutor accepting such aid, or both, to divest it of the responsibility imposed on it under law to determine in its sole discretion the appropriate sentence to be imposed on a convicted felon.
This court will not dignify counsel’s claimed quotation by denying it. It will not allow the slightest merit or validity to such an assault on its integrity and its independence. It regrets that the affirmant has seen fit thus to cast opprobrium on it, to intimate that it or any court would be so craven as to serve as a prosecutor’s house Judge. Nor will it allow the affirmant to use this obvious gambit to avoid sentencing of the defendant by a court which has always demonstrated its commitment to its responsibility to maintain judicial control of the sentencing process and to reject any effort by the defense or the prosecution to undermine its control of and final responsibility for this purely judicial function. Nor will this court allow the defense, by its patent attempt to cast the issue in terms of a *316 sham conflict of credibility between the pleading defendant’s counsel and itself, to oust it from its jurisdiction with respect to the taking of the defendant’s plea of guilty and the imposition of sentence thereunder. The court notes, in this regard, that the Assistant District Attorney, who was supposedly present at the bench conference at which defense counsel claims the court made its statement of obeisance as a prosecutor’s house Judge, fails to support the affirmant’s claim and denies the affirmant’s claim that the prosecutor made the commitment alleged to have been made “explicitly or implicitly” by the affirmant that the People would consent to the defendant’s withdrawal of his guilty plea if this court refused to accept the People’s recommendation for sentence.
Such an obvious attempt to misuse the process of plea bargaining cannot be allowed. The fact that some aspects of such bargaining must be off the record cannot be allowed to be used as a basis for Judge-shopping, and for seeking establishment of a system of prosecutorial judicial puppets, or the imposition of collusive arrangements between prosecutors and defendants who offer to help the People as the price of getting off scot-free from their admitted serious crimes with sentences so light as to encourage them to further criminal activity instead of moving them toward rehabilitation.
Plea bargaining negotiations which, like settlement negotiations, “ are delicate and sometimes intricate maneuvers” (Knobloch v. Royal Globe Ins. Co., 46 A D 2d 278, 293, n. 2 [Hopkins, J., concurring and dissenting]) should not be impeded by efforts of any defendant to use the off-the-record nature of such negotiations to misstate what was said either inadvertently through default of memory or deliberately in an effort to gain advantage or to put improper pressure on the People or the court or both. Nor may prosecutors collaborate with defendants in such maneuvers in order to ease their tasks by aiding informer defendants to escape the sentence which the court may find appropriate.
Here, as in People v. Davidson (42 A D 2d 957, affd. sub nom. People v. Selikoff, 35 N Y 2d 227, 244, supra) the averments in the affirmation submitted in support of the motion to withdraw constituted “ an incredible story ”, and “ even if the averments retained some * scintilla ’ of credibility it would merit no judicial recognition because of its effect on the plea negotiation process. The desirability of encouraging exposure on the record of what has been said, what has been agreed, and what conditions exist before performance of a ‘ promise ’ may *317 be relied upon, would be utterly negated.” Here not even a “ scintilla ” of credibility exists. The claimed promise is completely contradicted in the record of the plea hearing. An examination of the exhibits attached to the affirmation shows that these supposedly contemporary memoranda ‘ ‘ to myself ’ ’ were obviously not written contemporaneously nor were they written solely for the affirmant’s records. No note for one’s own file would contain self-serving language clearly intended for the eyes of others, including those in the prosecution’s office, such as the following:
“ The question of good faith was bandied about, Mr. Leavey understandably not wishing to be tied down to any firm commitment or guarantee ”, or
“ I must say that Mr. Leavey was at all times above board and represented the office for which he works as a professional and a gentleman.” or
1 ‘ Leavey from the time my negotiations began with him knew that my client was interested in probation and would go to jail in contempt of court rather than testify if he was not given probation.”
Although here, unlike Davidson (supra), the promise is attributed to an existing and sitting court, it is clear from an impartial and dispassionate examination of the documents available with respect to the motion and the plea-taking record that, as in Davidson “ To order a hearing [here] under these circumstances * * * is to make a charade out of criminal procedure. A hearing is not always necessary (People v. McClain, 32 N Y 2d 697).” (People v. Davidson, 42 A D 2d 957, affd. 35 N Y 2d 227.)
The motion to withdraw the plea is therefore denied.

. Mr. Neugarten in an. affirmation dated December 4, 1974 submitted to this court does say: "Despite the absence of a precise agreement between Mr. Zapp ■and Mr. Leavey as to the statements made by various parties at the time the defendant entered his guilty plea we agree that the defendant may have been given the. impression that our office would"consent to a withdrawal of his plea if we could not ’•“commend probation to this Court at'the time of sentence. ” But it is noteworthy that Mr. Neugarten does not state that the source of this “impression” was anyone in the office of the Special Narcotics Prosecutor and that he also states, “Assistant District Attorneys of the Office of Prosecution are not authorized to promise defendants probation in exchange for cooperation, whether the promise is implied or explicit ” and that any statement by Mr. Leavey, explicit, or implicit, that he would probably recommend probation in exchange for the defendant’s có-operation should have been made part of the record, at the time the defendant’s guilty plea was entered. The same reasoning, pari passu, would be applicable, it would seem, to a recommendation of permission to withdraw the plea if the defendant were denied probation.

. In an effort to overcome this patent error, the affirmant states: “Exhibit B describes the plea being taken on the 23rd of May. This is an error, May 23rd, I believe, was the last adjourned date before the plea was entered into. ” But is it likely that such a substantial error of a week would be made in a memo purporting to have been written, according to the date on it, just five days after the occurrences supposedly chronicled therein?